UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HARRY D. MABREY,
　　Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
　　Defendant.

Case No. 1:13-cv-555
Dlott, J.
Litkovitz, M.J.

REPORT AND
RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 20) and the Commissioner's response in opposition (Doc. 21).

## I. Procedural Background

Plaintiff protectively filed applications for DIB and SSI in March 2010, alleging disability since June 30, 2009, due to breathing problems, a tracheotomy tube hole, depression, asthma, a mental disorder, and a learning disability. These applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Kenneth Wilson. Plaintiff and a vocational expert (VE) testified at the ALJ hearing. On April 19, 2012, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the

relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] met the special earnings requirement of the Act on June 30, 2009, the date he alleged he became unable to work, and continues to meet those requirements through the date of this decision.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since June 30, 2009, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: tracheocutaneous fistula; hypertension; and obstructive sleep apnea (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except as follows: the [plaintiff] could perform frequent balancing, stooping, crouching, and crawling; however, he could only occasionally climb ramps or stairs, and never climb ladders, ropes, or scaffolds. Further, the [plaintiff] should avoid concentrated exposure to extreme cold, extreme heat, and humidity, and all exposure to pulmonary irritants, such as gases, fumes, and dust. Additionally, the [plaintiff] could maintain attention and concentration for two-hour periods over an eight-hour period with normal breaks; complete simple and routine instructions and some complex; and adapt to changes in the work setting. Finally, the [plaintiff] could interact appropriately with co-workers and supervisors, but should only occasionally interact with the general public.
>
> 6. The [plaintiff] is capable of performing his past relevant work as an order filler and inspector. This work does not require the performance of work related

activities precluded by the [plaintiff's] residual functional capacity (20 CFR 404.1565 and 416.965).[1]

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from June 30, 2009, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).

(Tr. 14-21).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

---

[1] Plaintiff's past relevant work was unskilled and was as a packager (DOT # 920.587-018) which is generally performed at the medium exertional level, and order filler (DOT # 920.587-018) and inspector (DOT # 741.687-010), both of which plaintiff generally performed at the light exertional level. (Tr. 21). The DOT (Dictionary of Occupational Titles) can be found at www.govtusa.com/dot/.

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson,* 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Error

On appeal, plaintiff alleges as his sole assignment of error that the ALJ erred by relying on the VE's testimony to find plaintiff can perform his past relevant work. (Doc. 20). Plaintiff alleges that the hypothetical the ALJ posed to the VE did not include all of the nonexertional limitations the ALJ assessed as part of his RFC finding. Specifically, the ALJ included in the RFC finding limitations against "*all* exposure to pulmonary irritants, such as gases, fumes and dust" (Tr. 17) (emphasis added); however, the ALJ included a limitation against only "*concentrated* exposure to environments with pulmonary irritants such as dust, fumes, gases" in the hypothetical posed to the VE (Tr. 57-58) (emphasis added). Plaintiff alleges that because the VE's testimony does not take into account all of the functional limitations assessed by the ALJ, the ALJ's RFC finding is irreconcilable with the VE's testimony and the ALJ's finding that plaintiff can perform his past relevant work made in reliance on the VE's testimony is not supported by substantial evidence. (Doc. 20 at 5-6).

Plaintiff further alleges that even assuming he is limited to concentrated rather than all exposure to pulmonary irritants, the VE's testimony that he can perform his past relevant work appears to be in conflict with the DOT. Plaintiff notes that according to the DOT, the prior jobs identified by the VE require either "frequent" or "constant" exposure to "atmospheric conditions." *See* DOT #920.587-018, 1991 WL 687916 (packager) and DOT #741.687-010,

1991 WL 680249 (paint spray inspector).[2] Thus, plaintiff contends that it appears an individual with a limitation against only concentrated exposure to pulmonary irritants such as dust, fumes and gases would be unable to perform the jobs identified by the VE in response to the ALJ's hypothetical. Plaintiff alleges that the ALJ violated Social Security Ruling 00-4p by failing to resolve the apparent conflict between the VE's testimony and the DOT. (*Id.* at 7-8).

In response, the Commissioner argues that any error the ALJ committed at Step Four of the sequential evaluation process in connection with his determination that plaintiff could return to his past work does not require a remand of this matter. The Commissioner contends this is so because the VE identified jobs involving no exposure to pulmonary irritants which were consistent with the ALJ's ultimate RFC finding, and which exist in significant numbers in the national economy. (Doc. 21 at 5). The Commissioner states that Courts in the Sixth Circuit have found harmless error where the ALJ errs at Step Four but the evidence otherwise supports a finding that the plaintiff could perform jobs that exist in significant numbers in the national economy. The Commissioner alleges that because the VE identified other jobs in the national economy that plaintiff could perform, any errors committed by the ALJ in finding that plaintiff could perform his past relevant work were harmless and do not require a remand of this matter. (*Id.* at 5-6).

*i. The VE testimony*

At the ALJ hearing, the ALJ asked the VE at the beginning of his testimony to advise if at any point his opinion conflicted with information in the DOT and the basis for his opinion. (Tr. 56). The ALJ then asked the VE to classify plaintiff's past work. The VE classified the prior packager and order filler jobs as unskilled jobs under DOT #920.587-018, which plaintiff

---

[2] The DOT job conditions are taken from the section of the "Dictionary of Occupational Titles," Fourth Edition, Revised 1991, titled "Occupational Group Arrangement."

performed at the light level, and the inspector job as a light unskilled position under DOT #741.687-010. (Tr. 56-57). The ALJ formulated the first hypothetical as follows: an individual limited to light work with additional restrictions, including the "[i]ndividual would have to avoid concentrated exposure to environments with pulmonary irritants such as dust, fumes, gases. Have to avoid concentrated exposure to extreme heat or cold and extreme humidity[.]" (Tr. 57-58). The VE testified that an individual with those limitations could do the past work of inspector at the light level and packager or order filler as plaintiff performed the work at the light level. (Tr. 58).

The ALJ then posed a second hypothetical to the VE which incorporated the limitations of the first hypothetical with modified lifting/carrying restrictions of five pounds occasionally and less than five pounds frequently. (*Id.*). The VE testified that the jobs of inspector, packager and order filler would be precluded. (*Id.*). However, the VE testified that there would be other unskilled jobs in the national economy that plaintiff would be able to perform. (*Id.*). The VE identified these jobs as inspector, sedentary (DOT #669.687-014); assembler, sedentary (DOT #715.687-114); document preparer or copier operator (DOT #249.587-018); and copy examiner (DOT #979.687-026). The VE testified that there would be approximately 650 such jobs in the region and approximately 85,000 jobs in the national economy that the hypothetical individual would be able to perform. (Tr. 58-59). On follow-up questioning by counsel, the VE testified that he did not believe the need for a "clean air environment" would preclude these jobs. (Tr. 61).

*ii. The ALJ's Step Four finding is not supported by substantial evidence.*

Initially, the Court finds the VE's testimony does not substantially support the ALJ's finding that plaintiff is capable of performing his past relevant work. The VE testified that

plaintiff could perform the jobs of packager, order filler and inspector with limitations which included restrictions against concentrated exposure to environments with pulmonary irritants such as dust, fumes and gases. (Tr. 57-58). According to the DOT, the jobs identified by the VE require "frequent" or "constant" exposure to "atmospheric conditions." *See* DOT #920.587-018, 1991 WL 687916 (packager) and DOT #741.687-010, 1991 WL 680249 (paint spray inspector). "Atmospheric conditions (AC)" as that phrase is commonly used in the DOT is defined as "[a]n environmental factor . . ., meaning exposure to conditions such as fumes, noxious odors, dusts, mists, gases, and poor ventilation that affect the respiratory system, eyes, or the skin." *See* Program Operations Manual System (POMS)[3] at DI 25001.001(B)(5). Thus, it does not appear that plaintiff would be able to perform the jobs identified by the VE if he were restricted from concentrated exposure to environments with pulmonary irritants. Further, even assuming these jobs entailed less than concentrated exposure to pulmonary irritants, it is clear from the DOT job descriptions that plaintiff would nonetheless be unable to perform the jobs given the limitation in the RFC against "*all* exposure to pulmonary irritants." (Tr. 17) (emphasis added). Thus, because the ALJ relied exclusively on the VE's testimony to find that plaintiff could perform his past relevant work as an order filler and inspector, and because the VE's testimony does not support the ALJ's Step Four finding, the ALJ erred at Step Four by finding that plaintiff was capable of performing his past relevant work.

---

[3] The POMS is the *Program Operations Manual System*. *See* https://secure.ssa.gov/poms.nsf/home!readform. It is used internally by employees of the SSA in evaluating Social Security claims and does not have the force and effect of law. *Davis v. Sec'y of Health & Human Servs.*, 867 F.2d 336, 340 (6th Cir. 1989). The POMS explains the meaning of SSA terms as well as the meaning intended by terms appearing within the regulations. *Id.* (citing *Powderly v. Schweiker*, 704 F.2d 1092 (9th Cir. 1983)). *See also Harper-Lee v. Astrue*, No. 2:11-cv-571, 2012 WL 4483007, at *5 (S.D. Ohio Sept. 27, 2012) ("The POMS states only internal SSA guidance." It is not intended to and does not create rights enforceable by law.).

   *iii. The errors committed by the ALJ at Step Four of the sequential evaluation process were harmless.*

  The Commissioner alleges that any errors the ALJ committed at Step Four of the sequential evaluation process do not require remand because the VE identified a significant number of other jobs in the national economy that plaintiff could perform; thus, any such errors were harmless and do not require a remand of this matter. (Doc. 21 at 5-6, citing *Wilson v. Astrue*, No. 07-99-GWU, 2008 WL 215225, at *4 (E.D. Ky. Jan. 23, 2008) (although ALJ erred by finding plaintiff was able to return to job which was not properly considered past relevant work, *see* 20 C.F.R. § 416.965(a), the error was harmless because the VE also cited a significant number of other jobs that plaintiff could still perform so that an alternative ground would exist to support the ALJ's decision); *Dekruger v. Comm'r of Soc. Sec.*, No. 08-10410, 2009 WL 596123, at *12 (E.D. Mich. Mar. 9, 2009) (even though ALJ apparently erred at Step Four by finding that plaintiff could perform job of companion that was not properly considered past relevant work, the error was harmless because the record substantially supported a finding that the plaintiff could perform the companion job as it is generally performed in the national economy and also supported a Step Five determination that the plaintiff was not disabled)). The Court agrees that any error committed by the ALJ at Step Four was harmless and does not warrant remand of this matter.

  The ALJ bears the burden at Step Five of the sequential evaluation process to establish that a significant number of jobs exist in the national economy that plaintiff can perform. *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); 20 C.F.R. § 404.1566. Under the regulations, "work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the

country." 20 C.F.R. § 404.1566(a). Here, the VE identified other jobs in the national economy that an individual with the limitations set forth in the first hypothetical would be able to perform. (Tr. 58-59). The jobs identified by the VE were the unskilled sedentary jobs of: inspector, DOT #669.687-014, 1991 WL 686074; assembler, DOT #715.687-114, 1991 WL 679431; document preparer or copier operator, DOT #249.587-018, 1991 WL 672349; and copy examiner, DOT #979.687-026, 1991 WL 688696. According to the DOT, these jobs do not require exposure to atmospheric conditions, humidity, weather, or temperature extremes. Thus, the jobs are compatible with the limitations against concentrated exposure to temperature extremes and humidity and all exposure to pulmonary irritants included in the RFC finding. (Tr. 17). The VE testified that approximately 650 such jobs exist in the region and approximately 85,000 jobs exist in the national economy that the hypothetical individual would be able to perform. (*Id.*). Even if the number of regional jobs identified does not constitute a significant number, the number of jobs in the national economy is a significant number of jobs. *See, e.g., Nash v. Sec'y of H.H.S.*, 59 F.3d 171, 1995 WL 363381, at *3 (6th Cir. June 15, 1995) (finding that 70,000 jobs was a significant number of jobs in the national economy); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578-79 (6th Cir. 2009) (4,800 jobs in the national economy is a significant number); *Putman v. Astrue,* No. 4:07-cv-63, 2009 WL 838155, at *2-3 (E.D. Tenn. Mar. 30, 2009) (200-250 regional jobs and 75,000 national jobs constitute significant numbers) (citing cases). Thus, the VE's testimony is sufficient to support the ALJ's non-disability determination at Step Five of the sequential evaluation process. Even though the ALJ did not proceed to this step of the sequential evaluation process, the ALJ's decision should nonetheless be affirmed given that substantial evidence supports the decision and remand would be a useless formality. *See Wilson,* 378 F.3d at 547 (where "remand would be an idle and useless formality," courts are not required

to "convert judicial review of agency action into a ping-pong game") (quoting *NLRB v. Wyman-Gordon,* 394 U.S. 759, 766 n. 6 (1969)). "No principle of administrative law or common sense requires [the Court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Dekruger,* No. 08-10410, 2009 WL 596123, at *12 (quoting *Fisher v. Bowen,* 869 F.2d 1055, 1057 (7th Cir. 1989)).

For these reasons, plaintiff's only assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this matter be **CLOSED** on the docket of the Court.

Date: 2/10/15

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

HARRY D. MABREY,
  Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
  Defendant.

Case No. 1:13-cv-555
Dlott, J.
Litkovitz, M.J.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).